# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CRIMINAL ACTION NO. 3:17mj-00396-DW

**UNITED STATES OF AMERICA**                                                     **PLAINTIFF**

**VS.**

**HAROLD PARKS, III**                                                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

In this "Motion for Pretrial Mental Health Examination of Defendant" (DN 10), pursuant to 18 U.S.C. §§ 4241, 4242 and 4247, Plaintiff United States of America raises a somewhat rarely litigated issue – whether Harold Parks, III, ("Parks"), a criminal defendant on pretrial release, should be committed to the custody of the Bureau of Prisons for an inpatient evaluation of his claim of insanity at the time of the offense. The Court conducted an evidentiary hearing on this issue on April 9, 2018. (DN 19; DN 20). Both Parks (DN 22) and the United States (DN 23) have filed post-hearing briefs. This matter is ripe for adjudication.

## Background

On July 26, 2017, Harold Parks, III, ("Parks") was charged with one count of intentional assault at a Veteran's Administration Hospital in violation of 18 U.S.C. § 113(a)(4) by way of an Information in the Western District of Kentucky.[1] (DN 1). Parks was not held in custody pending his trial. (*See* DN 6). On December 6, 2017, Parks filed a "Notice of Intent to Assert a Defense of

---
[1] Parks was originally charged in a citation with violation of KRS § 508.030, Assault in the fourth degree, and violation of 18 U.S.C. § 13, the Assimilative Crimes Act, which allows the United States to prosecute a defendant for a state offense committed on federal property. (DN 1-1, *sealed*). Under Kentucky law, assault in the fourth degree is a Class A misdemeanor. KRS § 508.030(2).

1

Insanity" pursuant to Federal Rule of Criminal Procedure 12.2(a) and (b). (DN 9). As a result of Parks' Notice, the United States filed a "Motion for Pretrial Mental Health Examination of the Defendant[,]" seeking an examination pursuant to 18 U.S.C. § 4242 to determine whether Parks was insane at the time of the alleged offense and an examination pursuant to 18 U.S.C. § 4241 to determine whether Parks is competent to stand trial. (DN 10). The United States' Motion asserted that Defendant should be committed to the custody of the Bureau of Prisons ("BOP"), Federal Medical Center, for the evaluations, pursuant to 18 U.S.C. § 4247. (*Id.*). Parks responded, objecting to the United States' request for a competency evaluation under § 4241 and to him being committed to federal custody for either evaluation. (DN 11).

This Court held an evidentiary hearing on the United States' Motion on April 9, 2018. To support its request for a competency evaluation under § 4241, the United States cited to a sealed "Forensic Psychological Evaluation" that Dr. Wayne G. Herner performed on Parks in August of 2017. (DN 20, at pp. 5-8 (citing DN 18, *sealed*)). The United States noted a number of "red flags" from Dr. Herner's report that it felt raised concerns as to Parks' competency. (*Id.* at p. 7). The United States then called Dr. Judith E. Campbell, a Forensic Psychologist at the Federal Medical Center, as a witness. Dr. Campbell testified as to her education, qualifications, and experience. (*Id.* at p. 14). When asked whether there was reason to believe an issue as to Parks' competency may exist based on Dr. Herner's report, Dr. Campbell answered that she has received court orders for evaluations for other individuals with similar diagnoses. (*Id.* at p. 17).

Based on this evidence, the Court concluded that the United States was entitled to an evaluation on the issue of Parks' insanity at the time of the alleged offense pursuant to § 4242 but that, at this time, there was not "reasonable cause" to believe Parks is "presently suffering 'from a

mental disease or defect rendering him mentally incompetent'" as required by § 4241.[2] (DN 19 (quoting 18 U.S.C. § 4241); DN 20, at p. 19).

After reaching this conclusion, the Court sought testimony regarding whether or not Parks should be committed to the Bureau of Prisons for the § 4242 evaluation. (DN 20, at p. 19). Dr. Campbell explained that during a BOP evaluation, because the individual stays at the institution for a period of time, it gives the evaluators an opportunity "to watch their day-to-day activities, [and] their abilities to get a really good, clear understanding of their functional capacity, in addition to being able to do testing and interviews." (*Id.* at pp. 14-15). An inpatient evaluation at the BOP, Dr. Campbell explained, can offer "a very thorough evaluation regarding mental state at the time of the offense." (*Id.* at pp. 19-20).

But Dr. Campbell indicated that "there are plenty of other psychologists around who can perform those evaluations" on an outpatient patient basis and that the BOP is "not the only show in town." (*Id.* at pp. 20-21). She conceded that it's possible that an outpatient psychologist could offer a perfectly reasonable report as to Parks' criminal responsibility. (*Id.* at p. 22). As a final note, Dr. Campbell explained that the BOP offers these evaluations as "a service to the court" and the BOP is an objective source without "a dog in the fight." (*Id.* at pp. 22-23). According to Dr. Campbell, the BOP's goal is to provide accurate and thorough information to serve the court, and she is not sure if "everybody else" offers that same perspective in completing evaluations. (*Id.* at p. 23).

After Dr. Campbell's testimony concluded, the Court ordered the parties to file simultaneous briefs on the issue of whether Parks should be committed to the Federal Medical Center for his § 4242 evaluation. (*Id.* at p. 25; DN 19, at p. 3). The United States' post-hearing

---

2 The Court's Order indicated that the United States' request for an examination of Parks' competency pursuant to 18 U.S.C. § 4241 would be denied "at this time with leave to refile if the § 4242 evaluation reveals that there is reasonable cause to believe Parks may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. (DN 19, at p. 2).

3

brief emphasizes Dr. Campbell's testimony that the BOP can provide a thorough picture of how an individual responds to certain environments and situations over a period of time and that the BOP is a "neutral party for the Court's purposes[,]"which it feels is "an important factor in assessing where the examination should be conducted." (DN 23, at pp. 5-6). The United States posits that an "in-custody evaluation" at the BOP "would be the most appropriate location" in order "to avoid further delay and to ensure a thorough and independent examination" of Parks. (*Id.* at p. 6).

In opposition, Parks' counsel stresses there is no need for Parks to be committed for the § 4242 evaluation and a less restrictive method of obtaining the evaluation should be preferred based on the American Bar Association's Criminal Justice Standards. (DN 22, at pp. 1-3). Although Dr. Campbell indicates that an inpatient evaluation may be "standard practice," Parks' counsel argues the United States has failed to show the necessity of such an impediment on Parks' liberty. (*Id.* at p. 3). Parks' counsel explains that committing Parks would cause major disruptions to his present medical treatment, including his daily medication schedule, his treatment with multiple medical specialists, and his attendance at group and individual therapy sessions specially directed at veterans. (*Id.* at p. 4). Removing Parks from his family and treatment regimen for 45 days, or potentially 75 days,[3] Parks' counsel asserts, would be "cruel" and is unnecessary in this case. (*Id.* at p. 5).

---

3  18 U.S.C. § 4247(b) allows for an original commitment period of not more than forty-five days to complete an examination pursuant to § 4242 but provides that "[t]he director of the facility may apply for a reasonable extension . . . not to exceed thirty days . . . upon a showing of good cause that the additional time is necessary to observe and evaluate the defendant." During the evidentiary hearing, Dr. Campbell testified that "more often than not, we request an additional 30 days to do those evaluations, because the statue allows it and also because we're – we've got a lot of folks who have been sent in for evaluations, and we're trying to be thorough and give everyone as much time as needed to get an evaluation done." (DN 20, at p. 24).

Analysis

18 U.S.C. § 4242 provides for psychological evaluations to determine whether a defendant was insane at the time the offense was committed. For the purposes of such an evaluation, "the court *may* commit the person to be examined . . . for a reasonable period, but not to exceed forty-five days . . ." 18 U.S.C. § 4247(b) (emphasis added). Under this statute the Court has the authority to commit Parks for an in-custody evaluation but is not required to do so. *See United States v. Clayton*, 3:17mj-132-CHL, 2017 WL 970282, at *2 (W.D. Ky. Mar. 13, 2017). In other words, it is a matter of discretion.

As the Fifth Circuit recognized in *In re Newchurch*, however, the district court's discretion in this respect is not unfettered.[4] 807 F.2d 404, 411 (5th Cir. 1986). Rather, when a defendant pleads not guilty by reason of insanity, the government must offer not only a reason for the custodial evaluation but also evidence because "[i]ncarceration for a month and a half or more should not be imposed unless it is demonstrably necessary." *Id.* The *Newchurch* court reached its conclusions based on the due process clause's guarantee that the government will "not imprison or otherwise physically restrain a person except in accordance with fair procedures" and requirement that the government, "when it deprives an individual of liberty, to fetter his freedom in the least restrictive manner." *Id.*

Courts following *Newchurch's* line of reasoning have specifically articulated that the government must offer evidence establishing "the presence of compelling governmental interests[,]" which would require an examination be conducted pursuant to a custodial

---

4 "Read together, the provision that the court 'may' commit a person to the custody of the Attorney General, the legislative statement that commitment should not be ordered if the examination can be conducted on an outpatient basis, and the provision that, if the defendant is committed, he shall be examined in the nearest suitable facility, all require that, before committing a defendant, the court determine, on the basis of evidence submitted by the government, subject to cross examination, and to rebuttal by the defendant, that the government adequately prepare for trial on the insanity issue by having the defendant examined as an outpatient." *Newchurch*, 807 F.2d at 411.

commitment, instead of on an outpatient basis. *See United States v. Neal*, 679 F.3d 737, 741 (8th Cir. 2012); *United States v. Deters*, 143 F.3d 577, 582-84 (10th Cir. 1998); *see also United States v. Song*, 530 F. App'x 255, 259 n. 5 (4th Cir. 2013). For instance, in *Deters*, which the United States cites to in its post-hearing brief, the court found the "government interests at stake were 'sufficiently weighty,' . . . to override the individual liberty interest of the defendant." 143 F.3d at 584 (quoting *United States v. Salerno*, 481 U.S. 739, 750-51, 107 S. Ct. 2095, 2103, 95 L.Ed.2d 697 (1987)). The court relied on two "sufficiently compelling" reasons to justify the defendant's detention during her examination: (1) the government's interest in ensuring the defendant appears for trial; and (2) the government's interest in providing the defendant with a speedy trial. *Id.* at 583-84.

Parks' case is not analogous to *Deters*. Neither of the "compelling reasons" for justifying the defendant's confinement in that case is present here. The first concern expressed by the district court in *Deters* was that "an outpatient exam presented the risk that the defendant would not appear for trial." *Id.* The defendant was living in California but facing trial in Kansas, and her living conditions in California were "unstable." *Id.* Given her living circumstances, she "may have been unable to return to Kansas, even if she desired to do so[,]" and the "transitory nature" of her living conditions may have complicated any attempts to locate her in California. *Id.*

In the instant action, however, Parks has a home in Louisville, Kentucky, where he is facing trial, and owns a reliable vehicle and has a "committed and loyal wife" wiling to accompany him to any appointments if needed."[5] (DN 22, at pp. 3-4). Parks has appeared in Louisville on multiple occasions, including his initial appearance (DN 6), further proceedings (DN 8), and at the evidentiary hearing on the instant motion (DN 19). *See United States v. Krauth*, No. CR09-3044,

---

5 Parks' counsel also puts forth evidence in the post-hearing brief explaining that requiring Parks to be committed for his examination would cause disruptions to his medical treatment, which could be harmful because he has worked extremely diligently over the past two years to stabilize himself based on this treatment regimen. (DN 22, at pp. 3-4).

6

2010 WL 428969, at *4 (N.D. Iowa Feb. 2, 2010) (finding that defendant was not risk of flight after voluntarily appearing in court on three occasions). There is no evidence that Parks is a risk of flight and, indeed, the United States does not make that argument.

The second "sufficiently compelling" reason identified by the district court to justify the defendant's commitment in *Deters* was the government's interest in a speedy trial. In *Deters*, almost 300 days had passed since the filing of the indictment. 143 F.3d at 584. Because the defendant raised the issue of psychiatric examinations "late in the proceedings," the court concluded that granting the defendant's original request – for a continuance to obtain a psychological exam from a doctor in California – could have led to further delay. *Id.* This would likely have resulted in the prosecution requesting a "re-examination with a doctor more familiar to the prosecution." *Id.* The Tenth Circuit in *Deters* concluded that this "potential delay" could be avoided by the district court ordering the examinations itself "to be performed by doctors in federal facilities, whose impartiality and qualifications were less likely to be questioned by either side." *Id.*

Here, Parks has not delayed in raising the issue of sanity like the defendant in *Deters*. Parks filed his notice that he may assert a defense of insanity less than five months after he was charged in the Information and within the deadline for filing "motions related to the defendant's evaluation and defense" (DN 8). *Cf. United States v. McDonald*, Crim. No. 09-656-01(SDW), 2012 WL 4659242, at *3 (D.N.J. Oct. 1, 2012) (finding compelling government interest where extensive history of delay in the case existed, including 1,065 days since indictment and more than 24 orders of continuance in the case). Further, there is no evidence that an out-of-custody evaluation would unduly delay the prosecution of this case. Indeed, it seems more likely that an in-custody examination would take longer based on Dr. Campbell's testimony that "more often than not, [the

7

BOP] requests an additional 30 days to do the evaluations . . . because . . . we've got a lot of folks who have been sent in for evaluations." (DN 20, at p. 24); *see also Krauth*, 2010 WL 428969, at *4, n.4 (noting that in-custody examinations are likely to take longer than outpatient examinations based on the statute allowing up to 75 days under § 4242, not including travel time to and from the facility).

Nor has the United States set forth any other "compelling governmental interest" that would override Parks' individual liberty interest in this case. The United States relies almost entirely on Dr. Campbell's testimony from the evidentiary hearing to support its arguments for a custodial examination. According to Dr. Campbell, there are benefits to an in-custody examination at the BOP, such as the ability to longitudinally observe an individual and its neutrality for court purposes. (DN 20, at pp. 14-15). The Court recognizes that "by its nature, an in-custody evaluation is likely to be more comprehensive than an out-of-custody evaluation." *Krauth*, 2010 WL 428969, at *5. But if commitment to the custody of the BOP was justified on this fact alone, then there would never be an out-of-custody evaluation. *Id.* The United States' reliance on this evidence alone is not sufficient to demonstrate the necessity of a custodial examination.

The United States has also failed to offer evidence suggesting there are no competent and impartial medical professionals who could conduct an out-of-custody forensic psychological or psychiatric examination of Parks. In fact, Dr. Campbell testified that there are plenty of other psychologists "who can perform those evaluations" on an outpatient basis and that it's possible that outpatient psychologists could offer a perfectly reasonable report as to Parks' criminal responsibility. (*Id.* at pp. 20-22).

Most importantly, Parks is currently on pretrial release.[6] The Court is conscious of the argument that he should not lose his freedom simply by raising the issue of sanity. *Krauth,* 2010 WL 428969, at *5 (citing *United States v. Gomez-Borges*, 91 F.Supp.2d 477, 478 (D.P.R. 2000)). If a valid examination can be conducted by an expert of the Government's choosing on an out-of-custody basis, the Court finds that is the preferable alternative in this factual scenario.[7] Here, it seems likely, based on Parks' counsel's research on psychologists and psychiatrists in the area (DN 11, at p. 7) and Dr. Campbell's testimony (DN 20, at pp. 20-22) that the United States can locate, within a driving distance of Parks' home that would allow him to travel to and from the appointment each day, a qualified psychologist or psychiatrist to conduct the forensic examination pursuant to § 4242. After considering the arguments of the parties and the relevant case law on this issue, the Court exercises its discretion in concluding that Parks' examination should be conducted on an out-of-custody basis.

ORDER

**IT IS THEREFORE ORDERED** that **the examination** ordered by the Court at DN 19, **pursuant to 18 U.S.C. § 4242** as to the issue of Defendant's insanity at the time of the alleged offense, **will be conducted on an out-of-custody basis** by a licensed or certified psychologist or psychiatrist of the United States' choosing and at its expense. The examination should occur **within the next 30 days**. If more time is needed, such a request should be made to the Court.

---

6 *See Clayton*, 2017 WL 970282, at *2 (citing *United States v. Lawson*, No. 6:12-CR-39-GFVT-HAI, 2013 WL 1498893, at *1 (E.D. Ky. Mar. 7, 2013) ("Because Defendant is not in pretrial custody, the Court appointed Dr. Anthony Ebben, Psy.D., to conduct a noncustodial competency evaluation."); *cf. United States v. Rayyan*, No. 16-CR-20098, 2016 WL 1746013, at *5 (E.D. Mich. May 3, 2016) ("Moreover, defendant has already been detained; thus, any restraint on his liberty is less consequential than if he were out on bond.")).

7 The United States' ability to choose the psychologist or psychiatrist to render the outpatient examination should alleviate the concerns it mentions regarding neutrality and impartiality of the examiner in its post-hearing brief.

**IT IS FURTHER ORDERED** that Parks shall cooperate fully in the examination and shall report on the dates and at the times designated for that purpose.

**IT IS FURTHER ORDERED** that following the examination, **pursuant to 18 U.S.C. § 4247(c)**, a psychological or psychiatric **report shall be filed with the Court**, with copies provided to counsel, and shall include:

(1) Parks' history and present symptoms;

(2) a description of the psychiatric, psychological, and medical tests that were employed and their results;

(3) the examiner's findings;

(4) the examiner's opinions as to the diagnosis, prognosis, and whether Parks was insane at the time of the offense charged.


Copies:      Counsel of Record